UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


L&B TRANSPORT, LLC

VERSUS

WILLIAM ROSS BEECH[1]

CIVIL ACTION

NUMBER 07-146-FJP-CN


**RULING**

This matter is before the Court on the defendant William Ross Beech's motion for summary judgment.[2]   Plaintiff has filed an opposition to the motion.[3]   For reasons which follow, defendant's motion for summary judgment is granted.[4]

**I.   Factual Background**

L&B Transport, LLC ("L&B") is a trucking company that handles dry and liquid bulk products with terminals in various locations in the United States.   Defendant William Ross Beech ("Beech") was

---

[1]This is a companion case to L&B Transport, LLC v. Jerry Busby, 06-310-FJP-SCR and L&B Transport, LLC v. Gerald Nelson, 07-42-FJP-SCR.   The Court granted summary judgment in favor of Jerry Busby on February 13, 2008, Rec. Doc. No. 42 and in favor of Gerald Nelson on July 22, 2008, Rec. Doc. No. 17.

[2]Rec. Doc. No. 10.

[3]Rec. Doc. No. 16.

[4]The Court has considered all of the contentions of the parties whether or not specifically discussed herein.

Doc#44947                         1

employed by L&B as a dispatcher at L&B's Creola, Alabama terminal from February of 2005 until late February of 2006.  Beech's primary responsibility in his position with L&B was coordinating the transportation needs of plaintiff's client, Olin Chemical Corporation ("Olin").

When the defendant was hired, Beech entered into an employment contract with L&B dated February 21, 2005.  This agreement included a "best efforts" provision, a confidentiality provision, and a non-compete provision.  This agreement was in effect on the date Beech terminated his employment with L&B.

On February 22, 2006, Jerry Busby resigned from L&B.  Jerry Busby is Beech's father-in-law and was at the time of his resignation the terminal manager at the L&B Creola, Alabama terminal.  The defendant ordered Busby to vacate the L&B premises on February 23, 2006.  On the following day, Jody Guillory, Vice President of L&B, drafted new employment agreements adding specific customers to the non-compete provision which was then in effect and presented this new agreement to Beech on February 24, 2006.  Beech was given until the end of the day to sign the agreement or terminate his employment with L&B.  Beech chose to terminate his employment with L&B and subsequently joined his father-in-law Jerry Busby at Action Resources.

L&B filed suit against Beech on December 1, 2006, alleging that he violated his employment agreement in the following ways:

(1) he made plans to leave L&B and work for a competitor trucking company; (2) he recruited other L&B employees to leave L&B and work for a competitor; (3) he took and used confidential proprietary information belonging to L&B to recruit L&B drivers and employees; and (4) he solicited customers of L&B on behalf of his new employer Action Resources in violation of the non-compete provision.   L&B seeks damages and injunctive relief in this lawsuit.

Beech denies plaintiff's allegations and contends that L&B's case is based on assumptions and speculations and claims the plaintiff has presented no evidence to support its claims against him.   Thus, Beech argues there are no material issues of fact in dispute and his motion for summary judgment should be granted.

The Court now turns to a discussion of the relevant law and its application to the facts of this case.

## II.  Law and Analysis

### A.    Summary Judgment Standard

Summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[5]  The Supreme Court has interpreted the plain language of Rule 56(c) to mandate "the entry of summary judgment, after adequate time for discovery and upon

---

[5]Fed. R. Civ. P. 56(c);  *New York Life Ins. Co. v. Travelers Ins. Co.*, 92 F.3d 336, 338 (5th Cir. 1996);  *Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 758 (5th Cir. 1996).

motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[6]   A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."[7]   If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response."[8]

If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial.[9]   The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence.[10]   Factual controversies are to be resolved in favor of

---

[6]*Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).  See also *Gunaca v. Texas*, 65 F.3d 467, 469 (5th Cir. 1995).

[7]*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting *Celotex*, 477 U.S. at 323-25, 106 S.Ct. at 2552).

[8]*Id.* at 1075.

[9]*Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1046-47 (5th Cir. 1996).

[10]*Little*, 37 F.3d at 1075;  *Wallace*, 80 F.3d at 1047.

the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."[11]  The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[12]  Unless there is sufficient evidence for a jury to return a verdict in the nonmovant's favor, there is no genuine issue for trial.[13]

In order to determine whether or not summary judgment should be granted, an examination of the substantive law is essential. Substantive law will identify which facts are material in that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[14]  The Court now turns to a discussion of each of plaintiff's claims.

### B.   L&B Claims Against Beech Also Brought Against Busby & Nelson

The Court finds it unnecessary to repeat the law and analysis in this opinion that was set forth in L&B Transport, LLC v. Jerry

---

[11]*Wallace*, 80 F.3d at 1048 (quoting *Little*, 37 F.3d at 1075). *See also S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 494 (5th Cir. 1996).

[12]*McCallum Highlands v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995), *as revised on denial of rehearing*, 70 F.3d 26 (5th Cir. 1995).

[13]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-51, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

[14]*Id.* at 248, 106 S.Ct. at 2510.

Busby[15] since L&B's case against Beech is the weakest among the three cases.    Thus, for the same reasons set forth in L&B Transport, LLC v. Jerry Busby, the Court finds that defendant's motion for should be granted.

**C.    The Non-Compete Agreement between L&B and Beech**

Unlike the employment contracts with Busby and Nelson, Beech's employment contract with L&B contained a non-compete clause which provides:

> 17.    NON-COMPLETE (SIC) AGREEMENT: Mr. Beech recognizes that the various items of Information are special and unique assets of L&B and need to be protected from improper disclosure.    In consideration of the disclosure of the Information to Mr. Beech, Mr. Beech agrees and covenants that for a period of two years following the termination of this Agreement, whether such termination is voluntary or involuntary, Mr. Beech will not directly or indirectly engage in soliciting any customer of L&B in Alabama for the benefit of a third party that is engaged in such business or be engaged in business as owner, partner or agent.    Mr. Beech agrees that this non-compete provision will not adversely affect Mr. Beech's livelihood.

L&B contends Beech violated this clause by soliciting L&B customers on behalf of his new employer Action Resources.    However, Beech contends this clause is unenforceable under Louisiana law because it fails to narrowly restrict the geographical limitation  of the clause as required by Louisiana Revised Statutes 23:921.    The Court

---

[15]The Court adopts the opinion in the Busby case by reference. See Civil Action Number 06-310, Rec. Doc. No. 42.

agrees.  L&B argues that because the employment agreement between
it and Beech also contains a severability clause,[16] the Court may
reform the non-compete provision to be consistent with Louisiana
law.

It is clear that a non-solicitation provision is subject to
the same geographical limitation requirement as a non-compete
provision.[17]  The relevant provisions of Louisiana Revised Statutes
23:921 state:

> A. (1) Every contract or agreement, or
> provision thereof, by which anyone is
> restrained from exercising a lawful
> profession, trade, or business of any kind,
> except as provided in this Section, shall be
> null and void.
>
> C. Any person, including a corporation and the
> individual shareholders of such corporation,
> who is employed as an agent, servant, or
> employee may agree with his employer to
> refrain from carrying on or engaging in a
> business similar to that of the employer
> and/or from soliciting customers of the
> employer within a specified parish or
> parishes, municipality or municipalities, or
> parts thereof, so long as the employer carries
> on a like business therein, not to exceed a
> period of two years from termination of

---

[16]Paragraph 20 of the Employment Agreement states: "If any
provisions of this Agreement shall be held to be invalid or
unenforceable for any reason, the remaining provisions shall
continue to be valid and enforceable.  If a Court finds that any
provision of this Agreement is invalid or unenforceable, but that
by limiting such provision it would become valid or enforceable,
then such provision shall be deemed to be written, construed, and
enforced as so limited."

[17]La. R.S. 23:921(C).

employment. An independent contractor, whose work is performed pursuant to a written contract, may enter into an agreement to refrain from carrying on or engaging in a business similar to the business of the person with whom the independent contractor has contracted, on the same basis as if the independent contractor were an employee, for a period not to exceed two years from the date of the last work performed under the written contract.

There is no dispute that Louisiana law governs the employment agreement between Beech and L&B. Louisiana has a strong public policy against covenants not to compete.[18] In fact, "'public policy requires that covenant-not-to-compete agreements "must be strictly construed in the employee's favor."'"[19] "A contract trying to fit into an exception to [the general rule against non-competition agreements] must strictly comply with the requirements contained in the statute."[20] Louisiana's approach to non-competition agreements "requires mechanical adherence to the requirements listed in the law (especially the geographical and time limitations)."[21]

---

[18]*Team Environmental Services, Inc. v. Addison*, 2 F.3d 124, 126 (5th Cir. 1993).

[19]*Water Processing Tech. v. Ridgeway*, 618 So.2d 533, 536 (La. App. 4 Cir. 1993)(quoting *Daiquiri's III On Bourbon Ltd. v. Wandfluh*, 608 So.2d 222, 224 (La. App. 5 Cir. 1992).

[20]*Gearheard v. DePuy Orthopaedics, Inc.* 1999 WL 638582, *4 (E.D. La. Aug. 19, 1999)(quoting *Team Environmental*, 2 F.3d at 126-27 (quoting *Comet Industries v. Lawrence*, 600 So.2d 85, 87 (La. App. 2 Cir. 1992))).

[21]*Sentilles Optical Services v. Phillips*, 26,594 (La. App. 2
(continued...)

Louisiana jurisprudence also requires "a geographic term which substantially conforms" to Louisiana Revised Statutes 23:921 "by identifying with reasonable certainty those areas in which the employer lawfully may prohibit competition."[22] Because Section 921 speaks to non-competition "within a specified parish or parishes, municipality or municipalities, or parts thereof, Louisiana courts have stated that non-competition agreements failing to specify the parish, municipality or parts thereof are unenforceable."[23] However, some Louisiana courts in certain exceptional circumstances have held valid a non-competition agreement that did not specify by name the parishes or municipalities included in the geographic limitation under the legal doctrine of reformation.[24]

---

[21](...continued)
Cir. 1995), 651 So.2d 395, 399.

[22]*Team Environmental*, 2 F.3d at 127.

[23]See *Team Environmental*, 2 F.3d at 127(invalidating non-competition agreement prohibiting competition "within a two hundred (200) mile radius of Employee's base of operations at the time of termination."); *Cellular One, Inc. v. Boyd*, 94,1783 (La. App. 1 Cir. 3/3/95), 653 So.2d 30, 33; *Francois Chiropractic Center v. Fidele*, 630 So.2d 923, 926 (La. App. 4 Cir. 1993)(invalidating non-competition agreement prohibiting competition "within a ten (10) mile radius of the outer city limits of New Orleans, Louisiana").

[24]See *Petroleum Helicopters, Inc. v. Untereker*, 1998-1816 (La. App. 3 Cir. 3/31/99), 731 So.2d 965, 968 (holding valid a non-competition agreement prohibiting employee from "carrying on or engaging in similar business, ... within the parishes in which [the employer] carries on a like business"); *Dixie Parking Service, Inc. v. Hargrove*, 1997-2 (La. App. 4 Cir. 3/26/97), 691 So.2d 1316, 1318 (holding valid the part of a non-competition provision prohibiting competition "within any parishes in which [the employer] conducted
(continued...)

In these exceptional instances where a court does determine that the geographic scope of a non-competition agreement does not conform to the law, the Louisiana Supreme Court has permitted reformation of the geographical scope.[25] However, the majority of the courts in Louisiana decline to save invalid non-competition provisions through reformation.[26] If courts always reformed invalid non-competition provisions, "employers would be free to routinely present employees with grossly overbroad covenants not to compete."[27] Furthermore, the reformation of these non-competition provisions would "place courts in the business of either saving or writing a contract that is not generally favored by law."[28]

In *Team Environmental Services, Inc. v. Addison*, the Fifth Circuit addressed a dispute between a former employer and former employees over a non-competition agreement which included a

---

[24](...continued)
business at the time of [the employee's] termination").

[25]See *Amcom of Louisiana v. Battson,* 96-0319 (La. 3/29/96), 670 So.2d 1223 (*per curiam*)(reversing appellate court and reinstating judgment of trial court, which reformed a non-competition provision encompassing a geographical area of a 75-mile radius of Shreveport or Bossier City).

[26]See *Team Environmental*, 2 F.3d at 127; *Summit Institute v. Prouty*, 29,829 (La. App. 2 Cir. 4/9/97), 691 So.2d 1384, 1389; *Sentilles*, 651 So.2d at 400; *Water Processing Technologies, Inc. v. Ridgeway*, 618 So.2d 533, 536 (La. App. 4 Cir. 1993); *Comet*, 600 So.2d at 88.

[27]*Team Environmental*, 2 F.3d at 127.

[28]*Gearheard v. Du Puy Orthopaedics, Inc.*, 1999 WL 638582 (E.D. La. Aug. 19, 1999) at *6.

geographical limitation.  Specifically, the contract between the parties in *Team Environmental* prohibited employees, upon their termination or separation from the employer (LRI), from acting "as an ... employee... or manager ... [of] any business activity which is competitive with any services offered by, or any business activities pursued by Employer at the time of termination, within a two hundred (200) mile radius of Employee's base of operations at the time of termination... ."[29]

LRI (the predecessor to Team Environmental, Inc.) brought suit to enforce the agreements and, although the contractual geographical term was broader than permitted by statute, the district court issued a preliminary injunction enforcing the agreements to the extent permitted by Louisiana law and enjoined the defendants from working for a competitor within any of the 13 Louisiana parishes and 5 Mississippi counties in which LRI did business.[30]  The former employees appealed.  The Fifth Circuit held that on their face, the LRI agreements did not conform to statutory requirements since the parishes or municipalities in which LRI did business were not specified.  However, LRI argued that the Court should enforce the agreements because "the inconsistency is merely a technical deficiency which does not justify discarding the agreements, especially where, as here, the agreements contain a

---

[29]*Team Environmental*, 2 F.3d at 125.

[30]*Id.*

savings clause expressly providing for reformation."[31]  To this argument, the Fifth Circuit stated: "Louisiana jurisprudence, albeit nascent in this area, is to the contrary."[32]

The Fifth Circuit discussed the history behind the Louisiana statute and concluded that, since non-competition provisions are generally disfavored, "'a contract seeking to fit into an *exception* to this rule must strictly comply with the requirements contained in the statute.'[33]  LRI's contracts do not."  The court continued, "[n]or can these contracts be saved through reformation."[34]

The Fifth Circuit also held that the statute permits non-competition agreements only in parishes or municipalities where the employer "carries on a like business"; "LRI's agreements barred competition in a far larger area."[35]  The court noted that LRI did business in a 13-parish area along the Mississippi River between Baton Rouge and New Orleans as well as in five counties in Mississippi, but that the agreements "covered a 200-mile radius area around Baton Rouge, including most of Louisiana, a substantial

---

[31]*Id.* at 126.

[32]*Id.*

[33]*Id.* at 126-27, quoting *Comet*, 600 So.2d at 88 (emphasis in original).

[34]*Id.* at 127.

[35]*Id.*

portion of Mississippi, and small parts of Texas and Arkansas."[36]

The Fifth Circuit's holding was based on the following analysis:

> An employee barred from plying his trade within 200 miles of his home would be far more hesitant to leave his job than if the proscription affected a substantially smaller area. This increased hesitancy obviously impacts the bargaining relationship with the current employer. Were courts to reform and enforce agreements like those at bar, employers would be free routinely to present employees with grossly overbroad covenants not to compete. While the employer presumptively would know that the agreement would be enforced only to the limit of the law, the employee likely would not. The result would be an impact on the employer-employee relationship not intended by the legislature when it enacted the 1989 amendments. That type expansion is a matter better addressed to the Louisiana legislature.

> By invalidating the LRI agreements, we do not require employers to use "magic words." Rather, consistent with Louisiana jurisprudence, we require a geographic term which substantially conforms to the statute by identifying with reasonable certainty those areas in which the employer lawfully may prohibit competition. The instant LRI agreements do not satisfy this standard and therefore cannot be enforced.[37]

Similarly, in *Gearheard v. De Puy Orthopaedics, Inc.*, the district court for the Eastern District of Louisiana addressed a

---

[36]*Id.* (citations omitted).

[37]*Id.*

Doc#44947                    13

case involving an employment agreement which contained two separate non-competition provisions.[38]  The first prohibited the plaintiff from "sell[ing] any competitive products or engag[ing] in any competitive activities, without having first obtained DePuy's written permission to do so."[39]  The second provision, which also contained a change of control provision, stated:

> In the event of a change of control of DePuy through a sale of DePuy to any other orthopaedic company, ... in which even You agree that the non-compete provisions above will remain in effect for the remainder of the original term of this Agreement but will only apply to the DePuy Territory in which You sold Products at the time of the change of control.[40]

Gearheard argued that DePuy's business did not include every parish in the State of Louisiana.  However, a DePuy representative testified by affidavit that DePuy had sales associates active throughout the entire State of Louisiana, and there was not a parish in the state that DePuy was not actively promoting the sale of its products.[41]  DePuy contended that the geographical limitation was valid and enforceable, but in the alternative, the court could reform the provision's geographical limitation to conform to the

---

[38]1999 WL 638582 (E.D. La. Aug. 19, 1999).

[39]*Id.* at *1.

[40]*Id.* at *2.

[41]*Id.*

formal statutory requirements.[42]   In response, the plaintiff contended that the non-competition clause was in violation of Louisiana statutory law because its geographical scope was vague and overbroad.

In *Gearheard*, the non-competition provision at issue defined the prohibited territory to include, "'[t]he State of Louisiana,' *i.e.* all sixty-four parishes."[43]   Regarding the scope of this geographical limitation, the court reasoned as follows:

> However, the non-competition provision at issue specifically states that it applies "to the DePuy Territory in which [Gearheard] sold Products at the time of the change in control."  If the parties intended this provision to apply to all sixty-four parishes, they could have simply referred to the Territory (as they did throughout the rest of the Agreement).  By expressly referring to the "DePuy Territory" and subsequently limiting that term, the parties clearly indicated that the non-competition provision does not contemplate a geographical scope of all sixty-four parishes.  Accordingly, the Court finds that the geographical limitation at issue includes only the parts of Louisiana "in which [Gearheard] sold Products at the time of the change of control.[44]

The Eastern District court also found the non-compete provisions vague in two ways:  first, the provision did not define

---

[42]*Id.* at *3.

[43]*Id.* at *5.

[44]*Id.*

the term "sold," and second, the agreement did not specify the time frame of the sales.[45]

DePuy cited Louisiana state court decisions to support its contention that it did not have to specifically enumerate parishes or municipalities for the non-competition provision to be valid.[46] Gearheard argued that the Third Circuit Louisiana Court of Appeal was incorrect on this point because "non-competition provisions with a geographical scope of 'wherever the employee worked' are invalid for failure to designate parishes and municipalities."[47] The Eastern District court addressed the case law and found those cases to be distinguishable:

> The first case involved a geographic limitation of "parishes in which [the employer] carries on a like business." *Petroleum Helicopters*, 731 So.2d at 967-68. The second case concerned a geographic limitation of "those parishes in which [the employee] has worked for [the employer] during the term of the agreement." *Allied Bruce*, 649 So.2d at 653. The term "sold" in the non-competition provision at issue is more equivocal than the broad terms "carries on a like business" (which mirrors the language of LSA-R.S. 23:921) and "worked" in *Petroleum Helicopters* and *Allied Bruce*, respectively. Because of the ambiguities discussed above,

---

[45]*Id.*

[46]*Id.*  The court discussed the cases cited by DePuy, which were *Petroleum Helicopters, Inc. v. Untereker*, 1998-1816 (La. App. 3 Cir. 3/31/99), 731 So.2d 965 and *Allied Bruce Terminex Co., Inc. v. Guillory*, 94-319 (La. App. 3 Cir. 11/2/94), 649 So.2d 652.

[47]*Id.*

> this Court finds that the non-competition
> provision at issue is vague in its
> geographical scope and does not substantially
> conform to the requirements of LSA-R.S.
> 23:921(C).[48]

When presented with the argument by DePuy that the agreement could be reformed under Louisiana law, the court held that, "[i]n the instant case, it would be nearly impossible."[49]   The court further stated that, "[t]he provision does not contain an objective standard such as a 75-mile radius from a particular point or a list of potentially applicable parishes."[50]   The court also noted that because the provision used vague terms such as "sold Products" and "at the time of the change of control," reformation would require the court "to delve into the parties' actions and minds for interpretation."[51]   The court held that while DePuy argued for reformation consistent with the parties' intentions, DePuy also took the position that the parties intended the provision to apply to all sixty-four parishes of Louisiana.  Thus, because the court had already held this argument to be contrary to the Agreement's terms, DePuy's argument  in fact "highlight[ed] the abmiguity in

---

[48]*Id.*

[49]*Id.* at *6.

[50]*Id.*

[51]*Id.*

the provision's geographic scope."[52]

*Restivo v. Hanger Prosthetics & Orthotics, Inc.*[53] also involved a dispute over a non-competition agreement containing a vague geographic limitation.  In *Restivo*, the language of the provision at issue restricted competition anywhere the employee performed services on behalf of Hanger.  The federal district court for the Eastern District of Louisiana held that this language was overly broad since the phrase "performing services" is ambiguous.  Further, the court held it did not need to make "an *Erie* guess" as to whether Louisiana's statutory law requires a non-compete agreement to specifically list the parishes intended to fall within the geographical restriction.[54]

Specifically, the parties in *Restivo* disputed whether the geographical limitation in the non-compete provision at issue included the parish of St. Tammany.  The court held that the defendant could not show that Restivo performed services on behalf of Hanger in St. Tammany Parish, thus the non-compete provision did not apply there.[55]  The defendant moved for reconsideration of the court's initial ruling on the motion for summary judgment.

---

[52]*Id.*

[53]2007 WL 1341506 (E.D. La. May 4, 2007).

[54]See *Restivo v. Hanger Prosthetics & Orthotics, Inc.*, 483 F.Supp.2d 521 (E.D. La. 2007).

[55]*Restivo*, 2007 WL 1341506, at *3.

In denying the defendant's motion, the court reasoned as follows:

> Furthermore, upon reconsideration the Court finds that Louisiana law does require that parishes intended to fall within the geographical restriction be specifically identified in order for a non-compete agreement to be valid. As is illustrated here by the "performing services" language, it is clear that even seemingly innocuous language can unfairly restrict or inhibit a former employee from pursuing his trade. The purpose of La. R.S. § 23:921 was to limit the ability of an employer to unreasonably restrict its employees after they leave employment. **While a strict interpretation of the statute can be criticized as being overly technical, such a reading is consistent with Louisiana's strong public policy prohibiting covenants not to compete.**
>
> Louisiana's strong public policy restricting these types of agreements is based upon an underlying state desire to prevent an individual from contractually depriving himself of the ability to support himself and consequently becoming a public burden. *See McAlpine v. McAlpine*, 94-1595, p. 11 (La. 9/5/96), 679 So.2d 85, 91. Because such covenants are in derogation of the common right, they must be strictly construed against the party seeking their enforcement. *Hirsh v. Miller*, 249 La. 489, 187 So.2d 709, 714 (1966); *Turner Professional Services, Ltd. v. Broussard*, 99-2838, p. 3 (La. App. 1 Cir. 5/12/00), 762 So.2d 184, 185.[56]

Applying the statutory law and jurisprudence of the state of Louisiana to the facts of this case, the Court finds the non-

---

[56]*Id.* at *4 (emphasis added).

compete provision in the employment agreement between L&B and Beech is overly broad and unenforceable as a matter of law. The provision prohibits Beech from directly or indirectly soliciting "any customer of L&B in Alabama" for a period of two years following Beech's termination. By referring to the entire state of Alabama without making reference to specific counties or municipalities, this language clearly fails to meet the statutory requirements set forth in Louisiana Revised Statutes 23:921 for a geographical restriction in a non-compete provision.

The Court also finds that reformation of the non-compete clause is inappropriate under the facts of this case. First, the Court finds the term "any customer of L&B in Alabama" to be ambiguous and susceptible of different interpretations. The Court cannot ascertain if this means any customer of L&B in Alabama at the time of Beech's termination or any customer that becomes a customer of L&B during the two year period to which the restriction allegedly applies. Furthermore, the Court cannot ascertain what effect, if any, this provision would have if a customer with whom Beech was professionally engaged also subsequently became a customer of L&B. Thus, would Beech be required under the contract to disengage in business with that customer since the customer had become an L&B customer? Questions such as this support the Court's decision to hold that the non-competition clause was invalid under the law and facts of this case.

As the Court discussed in its previous L&B opinions, several L&B customers, specifically Olin Chemical Corporation, were contemporaneous customers of Action Resources within the time periods at issue in this lawsuit.  If Olin Chemical Corporation was a customer of Beech's new employer Action Resources prior to Beech's arrival, then Beech did not have to "solicit" Olin Chemical away from L&B.

Based on the ambiguous language of the provision, the Court follows the majority line of jurisprudence which does not support reformation of the non-compete provision in this case.  The Court also finds that the manner in which this non-compete provision is written strongly undermines the public policy behind Louisiana Revised Statutes 23:921 in protecting employees from unreasonable restrictions on their ability to support themselves.

**III. Conclusion**

For the reasons set forth above, the Court finds that there are no genuine issues of material fact which would preclude the Court from granting summary judgment in favor of the defendant William Ross Beech on all claims asserted by the plaintiff L&B Transport, L.L.C. in this matter.  Therefore, summary judgment is granted in favor of William Ross Beech and plaintiff's claims are

dismissed with prejudice.

Judgment shall be entered accordingly.

Baton Rouge, Louisiana, July 22, 2008.

FRANK J. POLOZOLA
MIDDLE DISTRICT OF LOUISIANA